UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NO. 08-11860 (WWB) |
|  | : |  |
| ERIE COUNTY PLASTICS | : |  |
| CORPORATION, | : | CHAPTER 11 |
|  | : |  |
|  | : |  |
| Debtor. | : | JUDGE BENTZ |
| _____ | : |  |

**CHAPTER 11 PLAN OF ORDERLY LIQUIDATION
JOINTLY FILED BY THE DEBTOR AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

**QUINN, BUSECK, LEEMHUIS, TOOHEY
& KROTO, INC.**
Lawrence C. Bolla, Esq.
Pa. Id. No. 19679
Nicholas R. Pagliari, Esq.
Pa. Id. No. 87877
2222 West Grandview Boulevard
Erie, PA 16506-4508
Tel: (814) 833-2222
Counsel to the Debtor

- And -

**BERNSTEIN LAW FIRM, P.C.**
Kirk B. Burkley, Esq.
P.a. Id. No. 89511
Gulf Tower, Suite 2200
Pittsburgh, Pennsylvania 15219
Tel: (412) 456-8108
Counsel to the Official Committee
of Unsecured Creditors

# TABLE OF CONTENTS

**OFFICIAL UNSECURED CREDITORS COMMITTEE'S AND DEBTOR'S JOINT PLAN OF ORDERLY LIQUIDATION**

Page

**ARTICLE I** DEFINITIONS ..................................................................................... 1

    1.0    Definitions ........................................................................................ 1

**ARTICLE II** INTERPRETATION: APPLICATION OF DEFINITIONS, RULES OF CONSTRUCTION, AND COMPUTATION OF TIME ................................. 9

**ARTICLE III** ADMINISTRATIVE EXPENSE CLAIMS ........................................ 9

    3.1    Administrative Expense Claims ........................................................ 9
    3.1.1  Treatment of Administrative Expense Claims ................................... 9
    3.1.2  Allowance of Section503(b)(9) Administrative Expense Claims ..................... 10
    3.1.3  Allowance of Other Administrative Expense Claims ..................... 10
    3.2    Professional Compensation ............................................................. 10
    3.3    Administrative Bar Date ................................................................. 11

**ARTICLE IV** CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ................ 11

**ARTICLE V** TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN ....................................................................................... 12

    5.1    Class 1: Priority Claims ................................................................. 12
    5.2    Class 2: Secured Claims ................................................................. 12
    5.3    Class 3: PBGC Claims ................................................................... 13
    5.4    Class 3: General Unsecured Claims ................................................ 13
    5.5    Class 5: Equity Interests ................................................................. 13

**ARTICLE VI** ACCEPTANCE OR REJECTION OF THE PLAN ........................... 14

    6.1    Holders of Claims Entitled to Vote ................................................ 14
    6.2    Acceptance by Impaired Classes ................................................... 14
    6.3    Presumed Acceptance of the Plan .................................................. 14
    6.4    Presumed Rejection of the Plan ..................................................... 14
    6.5    Nonconsensual Confirmation ......................................................... 14

**ARTICLE VII** MEANS OF IMPLEMENTATION OF THE PLAN .................... 15

    7.1    Implementation of the Plan ........................................................... 15
    7.2    Liquidation of Debtor's Asset ........................................................ 15
    7.2.1  Adversary Proceedings ................................................................... 15

7.2.2   Sale of Erie Plastics Europe KFT a/k/a Erie Hungary .......................... 16
7.2.3   Sale of Debtor's Other Personal Property ......................................... 16
7.3     Committee Bank Account ................................................................ 16
7.4.1   Payment of Debtor's Employees ...................................................... 17
7.4.3   Payment of Debtor's Employees for Work Related to Proctor & Gamble
        Litigation ..................................................................................... 17
7.5     Maintenance of Books and Records .................................................. 17
7.6     Reliance on Others ....................................................................... 18
7.7     Liability for Errors or Omissions .................................................... 18
7.8     Indemnification of Reorganized Debtor ………………………………….. 18
7.9     Permitted Investments of Estate Property and Liquidating Plan Proceeds ...... 18
7.9.1   Types of Permitted Investments....................................................... 18
7.9.2   Types of Bank Accounts Permitted .................................................. 19
7.9.3   Terms of Permitted Investments ...................................................... 19
7.9.4   Valuation and Redemption of Permitted Investments ......................... 19
7.10    Amendment to Plan Prior to Effective Date  ..................................... 19
7.11    Cancellation of Equity Interests...................................................... 20

**ARTICLE VIII** DISTRIBUTIONS UNDER THE PLAN.................................... 20

8.1     Initial Distribution Date  .............................................................. 20
8.2     Disputed Reserves........................................................................ 20
8.2.1   Establishment of Disputed Reserves................................................. 20
8.2.2   Maintenance of Disputed Reserves................................................... 21
8.3     Quarterly Distributions After Initial Distributions ........................... 21
8.4     Record Date for Distributions......................................................... 21
8.5     Delivery of Distributions  ............................................................. 21
8.5.1   General Provisions; Undeliverable Distributions  ............................. 21
8.5.2   Minimum Distributions.................................................................. 22
8.5.3   Unclaimed Property  .................................................................... 22
8.6     Surrender of Canceled Instruments and Securities  .......................... 22
8.6.1   Generally.................................................................................... 22
8.6.2   Failure to Surrender Canceled Instruments....................................... 23
8.7     Lost, Stolen, Mutilated or Destroyed Instrument or Security............... 23
8.8     Manner of Cash Payments Under the Plan ....................................... 23
8.9     Time Bar to Cash Payments by Check ............................................. 23
8.10    Limitations on Funding of Disputed Reserves................................... 24
8.11    Compliance with Tax Requirements................................................. 24
8.12    No Payments of Fractional Cents ................................................... 24
8.13    Interest on Claims ....................................................................... 24
8.14    No Distribution in Excess of Allowed Amount of Claim...................... 25
8.15    Setoff and Recoupment................................................................. 25

**ARTICLE IX** DISPUTED CLAIMS ..................................................................................25

    9.1     Objection Deadline ...................................................................................25
    9.2     Estimation of Claims.................................................................................25
    9.3     Prosecution of Objections and Requests for Estimation.............................25
    9.4     No Distributions Pending Allowance .........................................................26

**ARTICLE X** EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................26

    10.1    Acceptance of Executory Contracts and Unexpired Leases .............................26
    10.2    Rejection of Executory Contracts and Unexpired Leases.................................26
    10.3    Approval of Rejection of Executory Contracts and Unexpired Leases ............26
    10.4    Approval of Acceptance of Executory Contracts and Unexpired Leases.........26
    10.5    Rejection Damages Claims Bar Date.............................................................27

**ARTICLE XI** ABANDONMENT OF PROPERTY .................................................................27

    11.1    Abandonment of Property Under the Plan.....................................................27
    11.2    Abandonment by the Debtor …………………………………………………… 27
    11.3    Abandonment of Claims ..............................................................................27

**ARTICLE XII** CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE EFFECTIVE DATE ..................................................28

    12.1    Conditions Precedent to the Confirmation of the Plan ...................................28
    12.2    Conditions Precedent to the Effective Date of the Plan...................................28
    12.3    Waiver of Conditions Precedent ..................................................................28

**ARTICLE XIII** EFFECTS OF CONFIRMATION ..................................................................28

    13.1    Vesting of Assets ......................................................................................28
    13.2    Release of Assets ......................................................................................29
    13.3    Binding Effect...........................................................................................29
    13.4    Term of Injunctions or Stays.......................................................................29
    13.5    Estate Litigation .......................................................................................29
    13.6    Injunction ................................................................................................29
    13.7    Injunction Against Interference with Plan ....................................................30
    13.8    Retention and Preservation of Claim Objection and Estate Litigation .............30

**ARTICLE XIV** RELEASES, INJUNCTIONS AND WAIVERS OF CLAIM .....................31

    14.1    Release of Committee ................................................................................31
    14.2    Release of Released Parties by the Debtor ....................................................31
    14.3    Release by Holders of Claims......................................................................31
    14.4    Costs of Asserting Claims Against Released Parties.......................................32

**ARTICLE XV** RETENTION OF JURISDICTION ..................................................................32

15.1    Retention of Jurisdiction ..................................................................32
15.2    Modification of the Plan ..................................................................34
15.2.1 Modification Before the Effective Date..........................................................34
15.2.2 Modification Before Substantial Consummation............................................34
15.2.3 Modification After Substantial Consummation ..............................................34

**ARTICLE XVI** MISCELLANEOUS PROVISIONS ..........................................................35

16.1    Payment of Statutory Fees ..................................................................35
16.2    Governing Law ..................................................................35
16.3    Notices ..................................................................35
16.4    Further Documents and Actions ..................................................................36
16.5    Relationship Between the Plan and Disclosure Statement ..............................36
16.6    Reservation of Rights..................................................................36
16.7    Post-Confirmation Date Fees and Expenses ..................................................36
16.8    Binding Effect..................................................................36
16.9    Exhibits ..................................................................37

**JOINT PLAN OF ORDERLY LIQUIDATION OF**
**ERIE COUNTY PLASTICS CORPORATION UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE**

The Debtor and the Official Committee of Unsecured Creditors of Erie County Plastics Corporation ("the Committee"), propose this Joint Plan of Orderly Liquidation pursuant to the provisions of Chapter 11 of the Bankruptcy Code ("the Plan"). The Plan is being proposed jointly by the Debtor and the Committee (the "Proponents"). The Proponents believe that it is in the best interest to quickly move to a Plan of Orderly Liquidation so as to best maximize the recovery of remaining assets and minimize the liabilities of the Estate for the benefit of all creditors.

Pursuant to the terms of the Plan, the Debtor and the Committee will conduct an Orderly Liquidation of the Debtor's assets over a period expected to end in 2010. The reorganized Debtor shall retain Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc. to assist in the liquidation of various tangible assets, including the Debtor's interest in Erie Hungary. The Committee will assist in the prosecution of Estate Litigation and objections to claims.

The Proponents believe that higher value can be obtained for the Estate through an orderly liquidation as compared to a forced liquidation which would occur if the case were converted to a Chapter 7 proceeding, primarily due to the nature and character of the remaining assets and liabilities of the Estate. It is anticipated that the Debtor will be able to manage the Estate in an efficient and cost effective manner, and that the Debtor will retain certain of its personnel to assist with the liquidation of assets and distribution of funds in accordance with of the terms of the Plan. The Debtor will aggressively attempt to collect all outstanding funds rightfully due to the Estate. Once funds have been collected, they will be utilized to make distributions to creditors.

# ARTICLE I

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Plan, shall have the meanings set forth below:

**1.0    Definitions**

    **1.1    "Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Section 3.3 of the Plan.

    **1.2    "Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Reorganization Case under sections 365(d)(5), 503(b) and 507(a)(l) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's business; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) compensation Claims by Professionals; and (d) any fees or charges assessed against and payable by the Debtor under section 1930 of title 28 of the United States Code.

    **1.3    "Allowed"** means with reference to any Claim: any Claim (a) a proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtor or other party in interest have not Filed an objection on or before the expiration of the time period set forth for the objection to such claim in the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim Holder; (b) listed on the Schedules as other than disputed, contingent or unliquidated; (c) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims hereunder); and (d) expressly allowed under or pursuant to the terms of the Plan.

    **1.4    "Assets"** means all the assets of the Estate, whether or not reflected in the financial records of the Debtor.

    **1.5    "Assumed Contracts"** means all executory contracts and unexpired leases assumed by the Debtor as stated in Sections 10.1 and 10.4 in either this Plan or pursuant to 11 U.S.C. § 365.

    **1.6    "Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Petition Date.

    **1.7    "Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and (b) the local rules of the Court, in each case, as in effect on the Petition Date.

**1.8** **"Business Day"** means any day other than (a) a Saturday; (b) a Sunday; and (c) a "legal holiday" as such term is defined in Bankruptcy Rule 9006 (a).

**1.9** **"Cash"** means legal tender of the United States of America.

**1.10** **"Cash Investment Yield"** means the net yield earned by the Debtor from the investment of Cash held pending Distribution in accordance with the provisions of the Plan.

**1.11** **"Causes of Action"** means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies (including without limitation any remedy based on theories of equitable subordination or similar equitable relief) and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Reorganization Case, including through the Effective Date.

**1.12** **"Claim"** means any claim against the Debtor, whether or not asserted, known or unknown, as the term "claim" is defined in section 101(5) of the Bankruptcy Code, including all Administrative Expense Claims.

**1.13** **"Claim Holder"** means holders of Claims in Classes 1, 2, 3, 4, and 5 entitled to receive Distributions under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

**1.14** **"Class"** means each of the groups of holders of Claims or Equity Interests described in Articles IV and V of the Plan.

**1.15** **"Collateral**" means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim up to the amount of such Claim, which Lien has not been determined by the Court to be subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

**1.16** "**Committee Bank Account**" means the account described in Section 7.3 of this Plan in which the Committee shall deposit Cash received from Estate Litigation.

**1.17** **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Court.

**1.18** **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.19** **"Confirmation Order"** means the order of the Court confirming the Plan under section 1129 of the Bankruptcy Code.

**1.20** **"Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania, Erie Division.

**1.21** **"Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Reorganization Case on October 17, 2008 to represent unsecured creditors of the Debtor, as that committee may be constituted from time to time.

**1.22** **"Debtor"** means Erie County Plastics Corporation.

**1.23** **"Debtor's Employees"** means the employees retained by the Debtor to assist in carrying out the provisions of this Plan as set forth in Section 7.4.1 of this Plan.

**1.24** **"Disclosure Statement"** means the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with respect to the Plan of Orderly Liquidation of Erie County Plastics Corporation Under Chapter 11 of the Bankruptcy Code, including the exhibits, appendices, and schedules thereto, as the same may be amended, modified, or supplemented from time to time and as approved by the Court pursuant to the Disclosure Statement Approval Order.

**1.25** **"Disclosure Statement Approval Order"** means the order of the Court approving the Disclosure Statement.

**1.26** **"Disputed Claim"** means a Claim or any portion thereof, (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtor or any other party in interest has Filed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) for which the amount or classification of the Claim specified in the relevant proof of claim exceeds the amount or classification of any corresponding claim listed in the Schedules by the Debtor; (d) no corresponding Claim has been listed in the Schedules by the Debtor or (e) is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn or determined by a Final Order.

**1.27** **"Disputed Reserve"** means a reserve established for the relevant Class for, among other things, the payment or other satisfaction of Disputed Claims that are Allowed after the Effective Date, which shall be held in the Estate by the Debtor.

**1.28** **"Distributions"** means the distributions of Cash or other property of the Estate to be made in accordance with the Plan.

**1.29** **"Effective Date"** means a date, as determined by the Debtor and the Committee, that is a Business Day on which (a) all conditions precedent set forth in Section 12.2 of the Plan have been satisfied or waived as provided in Section 12.3 of the Plan and (b) no stay of the Confirmation Order is in effect.

**1.30** **"ERISA"** shall mean the Employee Retirement Income Security Act of 1974, as amended.

**1.31** **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.32** **"Equity Interests"** means (a) any capital stock or other ownership interest in the Debtor including equitable ownership; (b) any option, warrant, or right to purchase, sell, or subscribe for an ownership interest in, or other equity security of, the Debtor; (c) any and all redemption, conversion, exchange, voting, participation, or dividend rights or liquidation preferences relating to any of the foregoing; and (d) all Claims arising in connection therewith, including, without limitation, Claims arising from the rescission of a purchase or sale of an equity security of the Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution under section 502 of the Bankruptcy Code on account of such Claim and attorneys' fees associated therewith.

**1.33** **"Estate"** means the estate of the Debtor in its Reorganization Case created by section 541 of the Bankruptcy Code upon the commencement of the Reorganization Case.

**1.34** **"Estate Litigation"** means all claims, Causes of Action and Recovery Actions of the Estate against third parties, including but not limited to, claims and causes of action against Proctor & Gamble, the Debtor's former officers and directors and/or any litigation or claims instituted or asserted by the Debtor or the Committee prior to the Effective Date or which may be brought on behalf of the Debtor by the Committee to recover preferences, fraudulent conveyances or avoidance actions of any kind whatsoever.[1]

**1.35** **"Estate Property"** shall mean the Estate Litigation and the Assets, including interest income accumulations thereon.

**1.36** **"File" or "Filed"** means, with respect to any pleading, entered on the docket of the Reorganization Case and properly served in accordance with the Bankruptcy Rules.

**1.37** **"Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, or rehearing has been Filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has been denied or mandamus, reargument, or rehearing has been denied or resulted in no modification thereof, and the time to take any further appeal, petition for certiorari, or move for mandamus, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be Filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.38.** **"General Creditor Liquidation Fund"** means the fund for distribution to unsecured creditors pursuant to Section 5.4 of the Plan.

---

[1] The claims, causes of action and recovery actions of the Estate are more fully disclosed in Article XIII hereof.

**1.39.** **"General Unsecured Claim"** means an unsecured claim against the Debtor as provided for under Section 5.4 herein.

**1.40** **"Impaired"** means, with respect to any Claim or Equity Interest, a Claim or Equity Interest with respect to which the Plan alters the legal, equitable, or contractual rights to which such Claim or Equity Interest entitles its holder.

**1.41** **"Initial Distribution Date"** means the date on which the Estate shall make its initial Distribution, which shall be a date selected by the Debtor in consultation with the Committee, and based on general notions of good faith and fair dealing in consideration of the then available Assets and expected future Claims and resolution thereof.

**1.42** **"Lenders"** means JPMorgan Chase Bank, N.A. and Comerica Bank.

**1.43** **"Liabilities"** means all of the liabilities of the Estate of the Debtor, whether or not reflected in the financial records of the Debtor.

**1.44** **"Lien"** has the meaning ascribed to that term in section 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided pursuant to a Recovery Action shall not constitute a Lien for the purposes of the Plan.

**1.45** **"Liquidating Plan Proceeds"** means the proceeds from the collection, sale or other disposition of Estate Property, net of the sum of: (i) customary closing costs, fees and commissions, including but not limited to, legal and accounting fees and disbursements, fees of brokers, finders and investment bankers, and all federal, state and local taxes and transfer fees; (ii) all valid liens, encumbrances or other claims, and (iii) reasonable expenses incurred on behalf of the Estate.

**1.46** **"PBGC"** means the Pension Benefit Guaranty Corporation, a wholly owned United States corporation, and an agency of the United States, that administers the defined benefit pension plan termination program established by Title IV of ERISA, 29 U.S.C. §§ 1301-1461.

**1.47** **"Pension Plan"** means the Erie County Plastics Retirement Income Plan, a tax qualified single-employer defined benefit pension plan, as defined in 29 U.S.C. §§ 1002(35) and 1301(a)(15).

**1.48** **"Permitted Investments"** means those investments of Estate Property or Liquidating Plan Proceeds by the Debtor as described in Section 7.9.

**1.49** **"Petition"** means the voluntary Chapter 11 bankruptcy petition filed by the Debtor on September 29, 2008.

**1.50** **"Plan"** means this Chapter 11 Plan of Orderly Liquidation (including all schedules and exhibits hereto or thereto), as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

**1.51** **"Priority Claim"** means any Claim of a kind specified in section 502(i) or 507(a)(3), (4), (5), (6), (7), (8) or (9) of the Bankruptcy Code.

**1.52** **"Professional"** means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.53** **"Quarterly Distribution Review Date"** means the last day of each quarterly calendar period (i.e., December 31, March 31, June 30, and September 30 of each calendar year) as of which the Debtor will perform a review of the Cash and financial position of the Estate (including, but not limited to, considering cash on hand and the balances of Disputed Reserves, the Secured Fund and the Unsecured Fund) to determine if, and to what extent, distributions can be made.

**1.54** **"Ratable Proportion"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed and Disputed Claims in that Class.

**1.55** **"Record Date"** means the record date for determining the entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the date the Disclosure Statement Approval Order is entered.

**1.56** **"Recovery Actions"** means, collectively and individually, without limitation, preference Claims or Causes of Action, fraudulent conveyance Claims or Causes of Action, rights of setoff and other Claims and Causes of Action under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other applicable bankruptcy and non-bankruptcy law, which this Plan assigns to the Committee to pursue on behalf of the Debtor's Estate.[2]

**1.57** **"Rejection Damages Claim"** means any claim arising from, or related to, the Debtor's rejection of an Executory Contract or Unexpired Lease or pursuant to Section 502(g) of the Bankruptcy Code.

**1.58** **"Released Parties" or "Released Party"** has the meaning ascribed thereto in Article XIV.

**1.59** **"Reorganization Case"** means the voluntary case commenced by the Debtor under Chapter 11 of the Bankruptcy Code before the Court, at case number 08-11860 (WWB).

**1.60** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor on October 16, 2008 (and as amended from time to time) pursuant to section 521 of the Bankruptcy Code, as such schedules and statements have been or may be supplemented or amended from time to time.

---

[2] The claims, causes of action and recovery actions of the Estate are more fully disclosed in Article XIII hereof

**1.61** **"Secured Claim"** means a Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to a setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to the setoff.

**1.62** **"Secured Fund"** means, at any point in time, all Liquidating Plan Proceeds after satisfaction of, or funding Disputed Reserves for, all Allowed Secured Claims.

**1.63** **"Subordinated Claims"** means all Claims (a) arising from the rescission of a purchase or sale of any security of the Debtor (other than equity securities), from damages arising from the purchase or sale of such a security, or for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of such Claim and (b) all Claims for fines, penalties, and punitive damages.

**1.64** **"Unimpaired"** means a Claim or an Equity Interest that is not "Impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.65** **"United States Trustee"** means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Western District of Pennsylvania Erie Division.

**1.66** **"Unsecured Fund"** means, at any point in time, all Liquidating Plan Proceeds after satisfaction of or funding Disputed Reserves for, all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.

# ARTICLE II

## INTERPRETATION: APPLICATION OF DEFINITIONS,
## RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

# ARTICLE III

## ADMINISTRATIVE EXPENSE CLAIMS

### 3.1 Administrative Expense Claims

### 3.1.1 Treatment of Administrative Expense Claims

Each Allowed Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are addressed in Section 3.2) shall be paid by the Estate in Cash, in full, on the later of the Initial Distribution Date or the date such Claim becomes an Allowed Claim, or in such amounts and on such other terms as may be agreed on between the holder of such Claim and the Debtor or is ordered by the Court.

### 3.1.2 Allowance of Section 503(b)(9) Administrative Expense Claims

Parties asserting Administrative Expense Claims pursuant to Section 503(b)(9) of the Bankruptcy Code must File and serve the Debtor, counsel to the Debtor, and counsel to the Committee a Request for Administrative Expense Claim, substantially in the form attached hereto as Exhibit 3.1.2, no later than forty-five (45) days after the Confirmation Date. The Request for Administrative Expense Claim shall identify any goods that were delivered to the Debtor, the date(s) of the delivery(s), location of the delivery(s), and shall attach sufficient documentation for the Debtor and the Committee to determine the validity of the asserted Administrative Expense Claim, including any purchase orders, invoices, shipping receipts or bills of lading that support the claim.

Parties-in-interest shall then have twenty (20) days to File a written objection to the relevant Request for Administrative Expense Claim. In the event that an objection is filed to a Request for Administrative Expense Claim, the Court shall schedule a hearing on the matter to decide whether to allow the Administrative Expense Claim.

### 3.1.3 Allowance of Other Administrative Expense Claim

Subject to section 3.2, parties asserting Administrative Expense Claims under any section of the Bankruptcy Code other than Section 503(b)(9), must File and serve the Debtor, counsel to the Debtor, counsel to the Committee, and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Court, an application for allowance of Administrative Expense Claim no later than forty-five (45) days after the Confirmation Date. Objections to any application for an Administrative Expense Claim must be Filed and served on the Debtor, counsel to the Committee, and the requesting Entity no later than thirty (30) days after the Filing of the relevant application.

### 3.2 Professional Compensation

Professionals or other Entities asserting Administrative Expense Claims based on professional services rendered before the Confirmation Date must File and serve the Debtor, counsel to the Debtor, counsel to the Committee, and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Court, an application for final allowance of such Claim no later than forty-five (45) days after the Confirmation Date. Objections to any application for final allowance of compensation by Professionals must be Filed and served on the Debtor, counsel to the Committee, and the requesting Entity by the later of (a) thirty (30) days after the Effective Date and (b) thirty (30) days after the Filing of the relevant application.

Professionals asserting Claims for professional services rendered after the Confirmation date shall be paid in accordance with section 16.7 of this Plan.

**3.3 Administrative Bar Date**

Any request for the allowance or payment of an Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are addressed in Section 3.2) shall be discharged and barred forever and shall not be enforceable against the Debtor or any of the property of the Estate, unless such request for the allowance and payment of an Administrative Expense Claim is Filed in the form of a motion and served upon the Debtor within forty-five (45) days after the Confirmation Date.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been otherwise settled prior to the Effective Date.

The classification of Claims and Equity Interests of the Debtor pursuant to the Plan are as follows:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | Priority Claims | Impaired—entitled to vote |
| Class 2 | Secured Claims | Unimpaired (to the extent of the value of collateral for the claim)—deemed to have accepted the Plan and not entitled to vote |
| Class 3 | Disputed Secured Claims of Pension Benefit Guaranty Corporation | Impaired – entitled to vote |
| Class 4 | General Unsecured Claims | Impaired—entitled to vote |
| Class 5 | Equity Interests | Impaired—deemed to have rejected the Plan and not entitled to vote |

The treatment of Claims against, and Equity Interests in, the Debtor is more fully set forth in Article V.

# ARTICLE V

## TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

The following treatment set forth in this Article V shall be accorded to Claims against, and Equity Interests in, the Debtor.

### 5.1 Class 1: Priority Claims

Class 1 consists of all Allowed Priority Claims. Unless the Debtor and the holder of any such claim agree to a different treatment, each holder of a Class 1 Claim shall receive on the Initial Distribution Date and on or before the tenth day after each subsequent Quarterly Distribution Review Date, its Ratable Proportion or agreed upon distribution of funds from the Unsecured Fund.

Class 1 is impaired, and the holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

### 5.2 Class 2: Secured Claims

Class 2 consists of all Secured Claims. Unless the Debtor and the holder of such Claim agree to a different treatment, each holder of an Allowed Secured Claim shall receive one of the following alternative treatments, at the election of the Debtor: (a) the Debtor shall surrender all Collateral securing such Claim to the holder thereof, without representation or warranty by or recourse against the Estate or (b) if the Collateral securing such Claim is sold or otherwise converted to cash by the Debtor free and clear of the Secured Claim holder's Liens, such holder shall receive, as promptly as practicable upon the closing of such sale, Cash (net of reasonable costs and expenses of sale) in the amount of the value of such holder's interest in such Collateral.

Class 2 consists of the Lenders and PBGC to the extent they have Allowed Secured Claims.

The Debtor reserves the right to object to any Claims filed or listed as Secured Claims and to the value of the Collateral securing such Claims.

To the extent that such holder's Claim is not satisfied in full such holder shall be entitled to a claim in Class 4 for the amount of such deficiency.

Class 2 is Unimpaired (to the extent of the value of the Collateral for the Claim) and is deemed to have accepted the Plan and are not entitled to vote, except for PBGC as described in section 5.3 below.

**5.3 Class 3: PBGC Claims**

Class 3 consists of the purported Secured Claim of the PBGC. While the Debtor and the Committee dispute the secured status of the PBGC's Claim, the parties have reached an agreement regarding the treatment of PBGC's claims.

The Debtor is a contributing sponsor, as defined in 29 U.S.C. § 1301(a)(13), of the Pension Plan. The contributing sponsor of a pension plan and each member of its controlled group are jointly and severally liable to the pension plan for contributions necessary to satisfy the minimum funding standards under 29 U.S.C. § 1083. *See* 29 U.S.C. § 1362(a). The Debtor failed to make its required minimum contributions for Plan Year 2006, the quarterly payments due during Plan Year 2007, and the April 15, 2008, quarterly payment. As a result, federal tax liens arose under 26 U.S.C. § 430(k). On June 18, 2008, PBGC perfected liens in the amount of $1,683,755 against the Debtor's and Erie Hungary's real and personal property.

The Pension Benefit Guaranty Corporation shall be paid fifty percent (50%) of any Assets recovered through Estate Litigation and/or the liquidation of Erie Hungary (as defined herein), excluding the recovery from any avoidance actions brought by the Committee pursuant to Chapter 5 of the Bankruptcy Code, until the PBGC's Secured Claim in the amount of $1,683,755 is paid in full. The remaining fifty percent (50%) of any Assets recovered through Estate Litigation and/or the liquidation of Erie Hungary (plus all recoveries from any avoidance actions brought by the Committee pursuant to Chapter 5 of the Bankruptcy Code) shall be Estate Assets and PBGC waives any right or claim thereto.

The Claims of Class 3 are impaired because there are not enough Assets to satisfy the Secured Claim of PBGC. As a result, the holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

**5.4 Class 4: General Unsecured Claims**

Class 4 consists of all Allowed General Unsecured Claims against the Debtor.

Unless the Debtor and the holder of any such claim agree to a different treatment, each holder of a Class 4 Claim shall receive on the Initial Distribution Date and on or before the tenth day after each subsequent Quarterly Distribution Review Date, its Ratable Proportion or agreed upon distribution of funds from the Unsecured Fund, if any.

The Claims of Class 4 are impaired and the holders of claims in this class are entitled to vote to accept or reject the Plan.

**5.5 Class 5: Equity Interests**

Class 5 consists of all Equity Interests in the Debtor. The Equity Interest owners of the Debtor shall not receive any distribution nor retain any property on account of their Equity Interests under the Plan unless and until all of the Claims in Class 1, 2, 3, and 4 have been paid in full. As

of the Effective Date, all Equity Interests and all certificates, documents and other instruments underlying Equity Interests shall be canceled.

Class 5 is Impaired, but because no distributions are anticipated to be made to the holders of Class 5 Equity Interests nor will such holders retain any property on account of their Equity Interests, such holders are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

# ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1 Holders of Claims Entitled to Vote

Classes 1, 3, 4, and 5 are Impaired under the Plan. Each holder of an Allowed Claim (and each holder of a Claim that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a)) in Class 1, 3 and 4 shall be entitled to vote to accept or reject the Plan.

### 6.2 Acceptance by Impaired Classes

Any Class of Impaired Claims shall be deemed to have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### 6.3 Presumed Acceptance of the Plan

Class 2 is Unimpaired under the Plan, and, therefore, the holders of Class 2 Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 6.4 Presumed Rejection of the Plan

Class 5 is Impaired under the Plan and the holders of Class 5 Equity Interests are presumed to have rejected the Plan  pursuant to section 1126(g) of the Bankruptcy Code.

### 6.5 Nonconsensual Confirmation

In view of the deemed rejection of the Plan by Class 5, the Proponents will request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.  If any of the other Impaired Classes fail to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Proponents reserve the right to request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such rejecting Class.

# ARTICLE VII

## MEANS OF IMPLEMENTATION OF THE PLAN

### 7.1 Implementation of the Plan

The Assets of the Estate will vest or re-vest in the Debtor pursuant to Section 13.1 of the Plan and will be liquidated by the Debtor and the Committee. The Plan will be funded in part by a $150,000 carve-out from the sale of the Debtor's real and personal property to Berry Plastics Corporation, which sale was approved by the Court on November 20, 2008. The Plan will also be funded by proceeds of Estate Litigation, which will be pursued in accordance with Section 7.2, below. The $150,000 carve-out from the sale of Debtor's real and personal property and the proceeds of the Asset liquidation and Estate Litigation will be distributed to creditors holding Allowed Claims in accordance with the terms of the Plan.

### 7.2 Liquidation of Debtor's Assets

All of the Debtor's Assets shall be liquidated pursuant to Sections 7.2.1 through 7.2.3 below.

### 7.2.1 Adversary Proceedings

The Debtor shall have the right to hire legal counsel to pursue the Proctor & Gamble Litigation. Counsel to the Debtor in the Proctor & Gamble Litigation shall be paid on a contingent basis and the Debtor shall have the right, in consultation with the Committee, to determine the terms and conditions of that engagement without the need for Court approval. The Debtor, in consultation with the Committee may pursue, abandon, or release any or all claims against Proctor & Gamble as it deems appropriate, without the need to obtain approval or any or other further relief from the Court.

In the event that the Debtor receives an offer to settle the Proctor & Gamble Litigation, the Debtor shall notify the Committee of said offer. In the event that the Debtor or the Committee believes the offer to be fair and reasonable, the Debtor or the Committee may file a motion, pursuant to Rule 9019 of the Bankruptcy Rules, to settle the Proctor & Gamble Litigation.

The Committee shall have the exclusive right to pursue all other Estate Litigation, including, but not limited to, adversary proceedings brought under Chapter 5 of the Bankruptcy Code and director and officer liability actions. The Committee may pursue, abandon, or release any or all Estate Litigation as it deems appropriate, without the need to obtain approval or any or other further relief from the Court. The Committee, in its sole discretion, may offset any such claim held against a person or Entity, against any payment due such person or Entity under the Plan.

Excluding the Proctor & Gamble Litigation, the Committee, in its sole discretion, may accept or reject any offers to settle any Estate Litigation and may file a motion pursuant to Rule 9019 of the Bankruptcy Rules to consummate settlement of any Estate Litigation.

All parties-in-interest shall have the right to object to any motion brought under Rule 9019 f the Bankruptcy Rules to settle any Estate Litigation and nothing contained herein shall prejudice those rights or alter the provisions of Rule 9019 in any way.

### 7.2.2 Sale of Erie Plastics Europe KFT a/k/a Erie Hungary

The Debtor is the 100% interest owner of all of the issued and outstanding interests of Erie Plastics Europe KFT. The Debtor will undertake to liquidate the assets of Erie Plastics Europe KFT in accordance with applicable Hungarian law. It is anticipated that once all of the assets of Erie Plastics Europe KFT are liquidated and all obligations due under Hungarian law are paid in full that approximately $250,000 will be remitted by Erie Plastics Europe KFT. These funds will be used to fund the Plan of Reorganization.

Notwithstanding the Debtor's efforts to liquidate the assets of Erie Plastics Europe KFT, in the event that an offer is submitted to purchase 100% of the Debtor's interest in Erie Plastics Europe KFT, the Debtor shall advise the Committee of such offer and if said offer is acceptable to the Debtor and the Committee, a motion shall be filed to approve the sale pursuant to Section 363 of the Bankruptcy Code.

All offers to purchase Erie Hungary received by the Debtor shall be disclosed to the Committee within 3 days of receipt thereof and all formal offers to purchase Erie Hungary received by the Committee shall be disclosed to the Debtor within 3 days receipt thereof. Pursuant to Section 363, any party in interest may object to any motion to approve the sale of Erie Hungary brought by the Debtor or the Committee and nothing contained in this Plan shall prejudice those rights or alter the provisions of Section 363 in any way.

### Section 7.2.3 Sale of Debtor's Other Personal Property

Subject to section 7.2.1, the Debtor shall have the right to liquidate Debtor's personal property without further order of Court, subject to the Debtor's fiduciary duties to preserve the value of the Estate and general notions of good faith and fair dealing.

### 7.3 Committee Bank Account

The Committee shall deposit Cash received from Estate Litigation in a FDIC or FSLIC insured demand deposit account controlled by the Committee and/or its agents. When appropriate, the Debtor may request disbursements from the Committee Bank Account to carry out the provisions of this Plan and the Committee, at its sole discretion, but based upon general notions of good faith and fair dealing, shall transfer appropriate amounts to the Debtor. At the conclusion of all Estate Litigation, excluding the Proctor & Gamble Litigation, the Committee shall transfer any amounts remaining in the Committee Bank Account to the Debtor for final distribution to creditors pursuant to the terms and conditions of this Plan.

### 7.4.1 Retention of Debtor's Employees

The Debtor shall retain P.C. "Hoop" Roche and Beth Zajac to assist in carrying out the provisions of this Plan. Roche will be compensated at the rate of $250 per hour and Zajac shall be compensated at the rate of $100 per hour, subject to the terms and provisions of sections 7.4.2 and 7.4.3 below.

### 7.4.2 Payment of Debtor's Employees

Subject to Section 7.4.3 of this Plan, Debtor's Employees shall submit monthly budgets to the Committee wherein the Debtor's Employees shall, to the best of their ability, forecast the tasks they will perform on behalf of the Debtor for the following month, excluding any tasks or services related to the Proctor & Gamble Litigation (discussed in 7.4.3 below) and estimate many hours those actions will require.

The Committee shall have the right to approve or deny any tasks or services listed on the above referenced monthly budgets. The Debtor's Employees shall only be entitled to compensation for actions performed listed on the respective monthly budget and approved by the Committee and any additional tasks or services requested by the Committee. Failure of the Debtor's Employees to submit the required monthly budgets shall result in the Employee waiving his or her right to compensation for the tasks or services performed in said month.

The Debtor's Employees shall submit monthly invoices reflecting actions performed on behalf of the Debtor or the Committee for the previous month to the Debtor and the Committee for review. The monthly invoices shall reflect the services performed by the Employee, the date of said services, and the amount of time each respective service took (broken down by tenths of hours). Upon approval by the Debtor and the Committee of the Debtor's Employees' monthly invoices, the Debtor shall pay the Employees on a monthly basis for the respective invoices from the Assets without the need for further order from the Court.

### 7.4.3 Payment of Debtor's Employees for Work Related to Proctor & Gamble Litigation

The Debtor and Committee expect that the Debtor's Employees will perform tasks and provide services related to the Proctor & Gamble Litigation. The Debtor's Employees will be compensated for their work in connection with the Proctor & Gamble Litigation in a manner that is acceptable to the Debtor's Employees, the Debtor and the Committee.

### 7.5 Maintenance of Books and Records

The Debtor shall maintain records and books of account relating to the Estate Property, and shall at all reasonable times, permit any authorized representative designated by the Debtor to have access to the financial records relating to the Estate Property. The Debtor shall file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate Property.

## 7.6 Reliance on Others

The Debtor may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons, provided, however, that the Debtor shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Plan.

## 7.7 Liability for Errors and Omissions

The Debtor and its agents and the Committee and its agents shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken, unless it shall be proved that the Debtor or its agents or the Committee or its agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of its rights, powers or duties according to this Plan. In the event such liability is proven, the Class 4 beneficiaries shall be entitled to reimbursement of their reasonable costs, including attorney's fees. The Debtor and the Committee make no representations as to: (i) the value or condition of the Estate Property or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Estate Litigation or Recovery Actions, (iii) the amount at which Liabilities may be settled, and (iv) the security afforded by this Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Plan, and the Debtor shall incur no liability or responsibility in respect of such matters.

## 7.8 Indemnification of the Reorganized Debtor and the Committee

The Debtor and its agents and representatives and the Committee and its agents and representatives shall be indemnified by and receive reimbursement from the Estate Property (whether or not distributed to the Beneficiaries) against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of its powers and duties pursuant to this Plan unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of gross negligence or willful misconduct. Other than claims by the Debtor or its agents and representatives or the Committee or its agents and representatives for indemnification or reimbursement resulting from their own gross negligence or willful misconduct, all claims of the Debtor and its agents and representatives or the Committee and its agents and representatives for indemnification or reimbursement under this Section 7.8 shall be first offset by the Debtor against any portion of the Estate Property or against any payment or distribution made or to be made in accordance with Article VIII of this Plan.

## 7.9 Permitted Investments of Estate Property and Liquidating Plan Proceeds

## 7.9.1 Types of Permitted Investments

Monies constituting part of the Estate Property shall, to the extent permitted by applicable law, be invested by the Debtor or the Committee: (a) in debt securities issued by the United States of America or by any agency or instrumentality thereof with a maturity of six (6) months or less, or

(b) in certificates of deposit issued with a maturity of six (6) months or less by banks which are members of the Federal Reserve System and covered by the Federal Deposit Insurance Corporation or (c) commercial paper rated no less than A-1, P-1 or F-1, money market accounts such as Vanguard or Fidelity provided however, that (i) each Permitted Investment shall be held solely in the name of the Debtor, (ii) to the extent practicable, the Debtor shall take physical possession of all such securities and secure them in a safe deposit box registered solely in the name of the Debtor, and (iii) no Permitted Investment may be made unless the Debtor shall furnish the bank through which such Permitted Investment is made or in whose certificates of deposit such Permitted Investment is made with a copy of this Plan and such bank shall have acknowledged to the Debtor in writing that upon the maturity of such Permitted Investment the proceeds thereof; if not reinvested in a Permitted Investment in accordance with the instructions of the Debtor, shall be deposited solely in a bank account of the Estate.

### 7.9.2 Types of Bank Accounts Permitted

The Debtor or the Committee may, in order to implement the distribution provisions of the Plan or because an anticipated distribution date or other cash commitment does not make a Permitted Investment practical, deposit Cash in FDIC or FSLIC insured demand deposit accounts.

### 7.9.3 Terms of Permitted Investments

All Permitted Investments shall be on terms which will allow distributions to be made consistent with the distribution requirements of Article VIII of this Plan and shall mature in such amounts and at such times as may be necessary to provide funds when needed to make payments, as required by the Debtor on behalf of the Estate as the case may be.

### 7.9.4 Valuation and Redemption of Permitted Investments

Any of the foregoing investments purchased with any of the Estate Property or Liquidating Plan Proceeds shall be deemed a part of the Estate Property and, for the purposes of determining the value of the Liquidating Plan Proceeds, the securities shall be valued at their market value. Any earned interest from Permitted Investments shall accrue ratably for the benefit of the creditors and shall be included in the Estate Property. At such time as it shall be necessary that some or all of the Permitted Investments be redeemed or sold in order to raise monies to comply with the provisions of  the Plan, the Debtor shall effect such redemption or sale, in such manner and at such time as the Debtor, in its discretion, deems reasonable.

### 7.10 Amendment to Plan Prior to Effective Date

Subject to further order of the Court, the Debtor and/or the Committee as Plan Proponents pursuant to Section 1121 of the Bankruptcy Code retain the exclusive right to amend the Plan and solicit acceptances thereof until the Effective Date.

### 7.11 Cancellation of Equity Interests

On the Effective Date, all certificates and other documents evidencing Equity Interests in the Debtor shall be canceled.

## ARTICLE VIII

## DISTRIBUTIONS UNDER THE PLAN

### 8.1 Initial Distribution Date

As soon after the Effective Date as is reasonably practicable, the Debtor shall make, after reserves provided for in Section 8.2 below, the Distributions required to be made under the Plan. The Initial Distribution Date will be determined by the Debtor, in consultation with the Committee, based on a review and evaluation of the projected cash needs of the Estate in comparison to the cash balances portion of the Estate Property as well as considering the balances and status of the Disputed Reserves, the Secured Fund and the Unsecured Fund. In determining the amount of any Distribution, the Debtor is not required to fund, in cash, amounts for Disputed Claims as set forth in Section 8.2 of the Plan as adequate book only reserves have been established. If the Debtor and the Committee believe that a Distribution can be made, then the amount and timing of the Distribution will be subject to the Debtor's and Committee's sole discretion.

### 8.2 Disputed Reserves

Upon allocation of funds from the General Creditor Liquidation Fund to the Unsecured Fund as provided for in Section 5.4, the Debtor shall, with respect to the Unsecured Fund only, establish reserves for distributions in respect of Disputed Claims, as soon after the Effective Date as is reasonably practicable. The Debtor shall establish reserves for distributions and respective Disputed Claims as follows:

### 8.2.1 Establishment of Disputed Reserves

On the Initial Distribution Date, and each subsequent date as to which Distributions are to be made in accordance with the Plan, and after making all Distributions required to be made on such date under the Plan, the Debtor shall establish, in the records maintained for the Estate a separate Disputed Reserve record for each of the Disputed Claims, each of which Disputed Reserves shall be administered by the Debtor. It is not necessary to create separate bank accounts for each Disputed Reserve established for each Disputed Claim as the records developed and maintained by the Debtor are adequate and sufficient. Pending final determination of such Disputed Claim, the Debtor shall establish such reserves for Distribution on account of each Disputed Claim in amounts equal to the amount the holder of such Claim or Claims otherwise would have been entitled to receive as of such date pursuant to Section 5.4 of the Plan, had such Disputed Claim been an Allowed Claim in the full amount of the Claim asserted.

### 8.2.2 Maintenance of Disputed Reserves

Each Disputed Reserve shall be closed and extinguished by the Debtor when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.

### 8.3 Quarterly Distributions After Initial Distribution

As of each Quarterly Distribution Review Date after the Initial Distribution Date, the Debtor, in consultation with the Committee, will determine, based on a review and evaluation of the projected cash needs of the Estate in comparison to the cash balances portion of the Estate Property (as well as considering the balances and status of the Disputed Reserves, the Secured Fund and the Unsecured Fund), whether or not allocations should be made as provided in Section 5.4 of the Plan, and whether an additional Distribution can be made and if it is determined that a Distribution is to be made, shall make such Distribution as soon as reasonably practicable following such quarterly Distribution Review Date. In determining the amount of any Distribution, the Debtor will reserve amounts for Disputed Claims as set forth in Section 8.2 of the Plan. The decision by the Debtor as to whether or not a Distribution can be made will be determined by the Debtor and the Committee in their sole discretion. Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be included by the Debtor in the Disputed Reserve pursuant to Section 8.2 and Distributed on the first date on which a Distribution is made after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution paid in accordance with this section.

### 8.4 Record Date for Distributions

The Debtor shall have no obligation to recognize any Claims other than Rejection Damages Claims Filed or occurring after the Record Date. Other than Rejection of Damages Claims, any Claims filed after the Record Date shall be null and void unless the claimant files a motion with the Court and is granted authority by the Court to file the Claim after the Record Date. Any Rejection Damages Claims filed after the date set forth in Section 10.5 of this Plan shall be null and void and Debtor shall have no obligation to recognize said Claim. In making any Distribution with respect to any Claim, the Debtor shall be entitled to recognize, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or listed on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the Debtor as of the Record Date.

### 8.5 Delivery of Distributions

### 8.5.1 General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Debtor at (a) the address of each holder as set

forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (b) the last known address of such holder if no proof of Claim is Filed or if the Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Debtor may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Debtor deems appropriate, but no Distribution to any holder shall be made unless and until the Debtor has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the Debtor shall be returned to, and held in trust by, the Debtor until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below in this Section. The Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

### 8.5.2 Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any subsequent date for Distributions (other than the final Distribution Date) would be $25 or less in the aggregate, no such Distribution will be made to that holder.

### 8.5.3 Unclaimed Property

Except with respect to property not Distributed because it is being held in a Disputed Reserve or because it represents a minimum Distribution under Section 8.5.2 above, Distributions that are not cashed by the claimant by the expiration of six (6) months from the date of the distribution check shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Estate, and the Claims with respect to which those Distributions are made shall be automatically canceled. After the expiration of that six month period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Estate pursuant to this Section shall be Distributed by the Debtor to the other holders of Allowed Claims in the Class of which the creditor to whom the Distribution was originally made is a member in accordance with the provisions of the Plan. If the Debtor believes the amounts vested or re-vested in the Estate are too immaterial to redistribute to the applicable claimants in accordance with Section 11.2 of the Plan, the Debtor may contribute said amounts to a charity of its choosing. Such contribution will be made by the Debtor and the Committee in their sole discretion.

### 8.6 Surrender of Canceled Instruments and Securities

### 8.6.1 Generally

Except as set forth in Section 8.7 hereof, as a condition precedent to receiving any Distribution hereunder on account of an Allowed Claim evidenced by instruments, securities or other

documentation canceled pursuant to Section 7.11 hereof, the holder of such Claim shall tender such instrument, security or other documentation evidencing such Claim to the Debtor (except as set forth in Section 8.5.2 hereof). Any distributions pursuant to the Plan on account of any Claim evidenced by such instruments, securities or other documentation shall, pending such surrender, be treated as an undeliverable Distribution in accordance with Section 8.5.1 hereof.

### 8.6.2 Failure to Surrender Canceled Instruments

If any holder of an Allowed Claim evidenced by instruments, securities, or other documentation canceled pursuant to Section 7.11 hereof, fails to surrender such instrument, security or other documentation or comply with the provisions of Section 8.6 hereof within one year after the Effective Date, its Claim for a distribution under the Plan on account of such instrument, security, or other documentation shall be discharged, and such holder shall be forever barred from asserting such Claim against the Estate or its property. In such case, any property held on account of such Claim shall be disposed of pursuant to the provisions set forth in Section 8.5.1 hereof.

### 8.7 Lost, Stolen, Mutilated or Destroyed Instrument or Security

Any holder of an Allowed Claim evidenced by instruments, securities or other documentation canceled pursuant to Section 7.11 hereof that has been lost, stolen, mutilated, or destroyed, shall, in lieu of surrendering such instrument, security or documentation: (a) deliver to the Debtor (i) an affidavit of loss reasonably satisfactory to the Debtor setting forth the unavailability of such instrument, security, or other documentation and (ii) such additional security or indemnity as may reasonably be requested by the Debtor to hold the Debtor harmless from any damages, liabilities, or costs incurred in treating such Entity as a holder of an Allowed Claim and (b) satisfy any other requirement under any other relevant document. Upon compliance with this Section 8.7 by a holder of an Allowed Claim evidenced by such instrument, security, or other documentation, such holder shall, for all purposes under the Plan, be deemed to have surrendered such instrument, security, or other documentation.

### 8.8 Manner of Cash Payments Under the Plan

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Debtor or by wire transfer from a domestic bank, at the option of the Debtor.

### 8.9 Time Bar to Cash Payments by Check

Checks issued by the Debtor on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Section 8.9 shall be made directly to the Debtor by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue

became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Debtor as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

## 8.10 Limitations on Funding of Disputed Reserves

Except as expressly set forth in the Plan, neither the Debtor, the Committee, nor the Estate shall have any duty to fund the Disputed Reserves.

## 8.11 Compliance with Tax Requirements

In connection with making Distributions under this Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable distribution in accordance with Section 8.5.1.

## 8.12 No Payments of Fractional Cents

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole cent.

## 8.13 Interest on Claims

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

**8.14 No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**8.15 Setoff and Recoupment**

The Debtor may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Claim.


# ARTICLE IX

# DISPUTED CLAIMS

**9.1 Objection Deadline**

All objections to Disputed Claims shall be Filed and served upon the holders of each such Claim not later than one hundred eighty (180) days after the Effective Date, unless otherwise ordered by the Court after notice and a hearing.

**9.2 Estimation of Claims**

At any time, the Debtor may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Committee has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

**9.3 Prosecution of Objections and Requests for Estimation**

Except as otherwise ordered by the Court, responsibility for the filing, litigation, settlement, or withdrawal of all objections to Disputed Claims or requests for estimation thereof, including

objections and estimation requests pending on the Effective Date, shall be the responsibility of the Committee (or the Debtor upon the consent and assignment of the Committee), and the costs of such litigation, settlement, or withdrawal shall be borne by the Estate. The Committee shall File and serve a copy of each objection upon the holder of the Disputed Claim to which the objection is being made as soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date unless such date is extended by order of the Court. From and after the Confirmation Date, all objections shall be litigated to a Final Order, except to the extent the Committee elects to withdraw any such objection or the Committee and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Court.

**9.4 No Distributions Pending Allowance**

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

# ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1 Acceptance of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases identified on Exhibit 10.1A attached hereto and made a part hereof shall be deemed accepted as of the Effective Date.

### 10.2 Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases not previously assumed by Court Order and/or not identified on Exhibit 10.1A shall be deemed rejected as of the Effective Date.

### 10.3 Approval of Rejection of Executory Contracts and Unexpired Leases

Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the Executory Contracts and Unexpired Leases rejected as of the Effective Date pursuant to the Plan.

### 10.4 Approval of Acceptance of Executory Contracts and Unexpired Leases

Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code of the acceptance of the Executory Contracts and Unexpired Leases accepted as of the Effective Date pursuant to the Plan.

**10.5 Rejection Damages Claims Bar Date**

All Rejection Damages Claims shall be filed with the Court and served upon the Debtor and the Committee within 30 days of the Effective Date. If a Rejection Damages Claim is not filed within 30 days of the Effective Date, the Rejection Damages Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate or their properties, successors, and assigns.


# ARTICLE XI

## ABANDONMENT OF PROPERTY

**11.1 Abandonment of Property Under the Plan**

Each of the assets, listed on Exhibit 11.1A attached hereto, shall be deemed abandoned by the Debtor as of the Effective Date, and the Confirmation Order shall constitute the Court's approval of such abandonment pursuant to section 554(a) of the Bankruptcy Code.

**11.2 Abandonment by the Debtor**

The Debtor shall have the right to abandon in any commercially reasonable manner (including abandonment or donation to a charitable organization of the Debtor's choice) any other property that the Debtor reasonably concludes is of no benefit to the Estate or its creditors or that it reasonably determines, at the conclusion of Distributions or dissolution of the Estate, to be too impractical to Distribute. Such abandonment shall be (a) affected by a separate order of the Court on proper notice to the relevant parties and (b) be deemed to have been made under the Plan.

**11.3 Abandonment Claims**

If the abandonment of any asset pursuant to the Plan (including those abandoned pursuant to Section 11.2) and the Confirmation Order results in damages to a non-debtor party, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Estate or their properties, successors, and assigns, unless a proof of claim is Filed and served upon counsel for the Debtor on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Court of an order authorizing abandonment of such asset.

# ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

### 12.1 Conditions Precedent to the Confirmation of the Plan

It shall be a condition precedent to the confirmation of the Plan, that the Confirmation Order, in form and substance acceptable to the Debtor and to the Committee, shall have been entered by the Court.

### 12.2 Conditions Precedent to the Effective Date of the Plan

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Section 12.3:

> (a) Confirmation Order. The Confirmation Order shall be a Final Order.

> (b) Plan. After the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification.

### 12.3 Waiver of Conditions Precedent

Each of the conditions precedent in Section 12.2 may be waived or modified, in whole or in part, by the Debtor and the Committee. Any such waiver or modification of a condition precedent in Section 12.2 may be affected at any time, without notice, without leave or order of the Court, and without any other formal action.

# ARTICLE XIII

## EFFECTS OF CONFIRMATION

### 13.1 Vesting of Assets

> (a) As of the Effective Date, title to the property of the Estate shall vest and/or re-vest in the Debtor subject to the Debtor's obligation to administer, liquidate and distribute the property in accordance with the terms of this Plan.

> (b) As of the Effective Date, all assets of the Debtor shall be free and clear of all claims except as provided for in the Plan or the Confirmation Order.

**13.2  Release of Assets**

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtor and its assets and properties.  Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article XV hereof.

**13.3  Binding Effect**

Except as otherwise provided in section 1121(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**13.4  Terms of Injunctions or Stays**

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the closing of the Reorganization Case.

**13.5  Estate Litigation**

Except as otherwise provided in the Plan, on and after the Effective Date, all Estate Litigation shall be conducted pursuant to Article VII, above.

**13.6  Injunction**

Except as otherwise provided in the Plan, the Confirmation Order or a separate Order of the Court, as of the Effective Date, all entities that have held or currently hold or may hold directly, derivatively or otherwise, a Claim or Equity Interest or other right that is terminated or canceled or otherwise subject to treatment pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of any such claim or equity interest:

(a)     Commencing or continuing in any manner, any action or other proceeding against the Debtor or the estate or its properties or interest in properties;

(b)     Attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Estate or its properties or interests in properties;

(c)     Creating, perfecting or enforcing any lien or other encumbrance against the Debtor or the Estate or its properties and interest in properties;

(d)     Asserting a setoff, right of subrogation, or recoupment of any kind against the Debtor or the Estate, or its properties or interests in properties; and

(e)     Commencing or continuing any action in any manner or in any place, with respect to Estate Property or against any of the Released Parties or that otherwise does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## 13.7  Injunction Against Interference with Plan

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest along with their respective present, future or former employees, agents, officers, directors or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

## 13.8  Retention and Preservation of Claim Objections and Estate Litigation

Pursuant to Section 1123(b)(3)(B) and subject to the provisions of section 9.3 of this Plan, upon entry of the Confirmation Order, the right to object to all Claims and interests asserted against the Debtor shall be assigned to the Committee. The Committee and Debtor shall prosecute all of the Debtor's Estate Litigation, subject to the provisions of Article VII, above, including without limitation:  (1)  Recovery actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtor within 90 days or one year prior to the Petition Date, the potential preference defendants are listed on Exhibit 13.8A of the Plan; (2) Any potential claim or Cause of Action which the Debtor may have against Proctor & Gamble; (3) All claims and Causes of Action disclosed in the Debtor's schedules and Statement of Financial Affairs which are incorporated herein by reference; (4) any and all claims and Causes of Action that the Debtor held pre-confirmation including, but not limited to, claims for unpaid accounts receivable and fraudulent transfer shall vest or revest in the reorganized Debtor except as otherwise provided in this Plan.

Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor and the Committee expressly reserve such claim or Cause of Action for later adjudication by the Debtor or the Committee (including without limitation, claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such claims or Causes of Action have been released in the Plan or any other Final Order.

# ARTICLE XIV

## RELEASES, INJUNCTIONS AND WAIVERS OF CLAIM

### 14.1  Release of Committee and Debtor

On the Effective Date, all entities shall be conclusively presumed to have released the following parties following the filing of the Reorganization Case (but solely to the extent set forth below): (a) the Committee (including all present and former members thereof) and its attorneys, accountants, advisors and financial advisors; and (b) the officers, attorneys, employees, accountants, advisors, and financial advisors of the Debtor (each of the foregoing, a "Released Party" and collectively, the "Released Parties"), from any claim or Cause of Action based on, arising from, or in any way connected with, (A) the Reorganization Case (including, without limitation, any actions taken and/or not taken with respect to the administration of Estate or the operation of the business of the Debtor); (B) the Plan or the Distributions received thereunder; and (C) the negotiation, formulation, and preparation of the Plan, except to the extent any such claim or Cause of Action against any Released Party arises solely as a direct result of that Released Party's fraud or willful misconduct.  In all respects, each of the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding anything to the contrary contained in the Plan, none of the releases provided herein shall prejudice or otherwise affect the right of any party in interest to object to (i) any applications for compensation filed by Professionals or (ii) any request seeking compensation under section 503 of the Bankruptcy Code.

Notwithstanding the foregoing, the Committee reserves the right to bring a cause of action against the Debtor's officers, directors, employees, accountants, advisors, and financial advisors for breaches of fiduciary duty and/or other wrongful acts or omissions based on, arising from or connected with pre-petition events and activities.

### 14.2 Release of Released Parties by the Debtor

Without limiting any other applicable provisions of Article XIV, as of the Effective Date, the Debtor on behalf of itself, its Estate, and its respective successors, assigns, and any and all Entities who may purport to claim by, through, for, or because of, them, shall be deemed to have unconditionally released and be permanently enjoined from any prosecution or attempted prosecution of any and all Causes of Action, including, without limitation, any Recovery Actions, that they have, may have, or claim to have, that are property of, assertable on behalf of, or derivative of the Debtor or its Estate, against the Released Parties (but solely in their capacity as Released Parties).

### 14.3 Release by Holders of Claims

On and after the Effective Date, each holder of a Claim or Equity Interest against the Debtor and all other entities shall be deemed to have released unconditionally all Estate Property and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, Recovery Actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, except to the extent necessary to enforce the provisions of the Plan.

Notwithstanding anything to the contrary contained in the Plan, none of the releases provided herein shall release any party from their duties and obligations under ERISA or release any claim PBGC may have relating to fiduciary breach.

### 14.4 Costs of Asserting Claims Against Released Parties

Neither the Debtor nor its successors or assigns, shall fund or be obligated to fund (whether directly or indirectly) the costs of pursuing against any of the Released Parties a Claim or Cause of Action or Recovery Action, that is released by the Plan.

## ARTICLE XV

## RETENTION OF JURISDICTION

### 15.1 Retention of Jurisdiction

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Reorganization Case, the Plan, the Confirmation Order, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b) To decide and resolve any and all motions, adversary proceedings, including Recovery Actions and other Estate Litigation, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c) To consider and rule on the compromise and settlement of any Claim against, or Cause of Action on behalf of, the Debtor or the Estate;

(d) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e) To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f) To hear and determine any and all applications for the allowance of compensation of Professional for professional services rendered and expenses incurred prior to the Confirmation Date;

(g) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan;

(h) To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i) To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any person's or Entity's obligations incurred in connection with the Plan;

(j) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k) To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l) To enforce remedies upon any default under the Plan;

(m) To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Reorganization Case (whether or not the Reorganization Case have been closed);

(n) To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Estate's obligations incurred in connection herewith;

(o) To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan, or the enforcement of any rights, remedies, or obligations created under the Plan;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) To hear any other matter if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan;

(t) To recover all Assets of the Debtor and the Estate wherever located; and

(u) To enter a final decree closing the Reorganization Case.

## 15.2 Modification of the Plan

### 15.2.1 Modification Before the Effective Date.

The Plan Proponents may alter, amend or modify the Plan or any provision or portion thereof under Section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date; provided, however, that there shall be no material modification to the Plan. The Plan Proponents shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or any Order of the Court. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of, or releases granted to, such holder.

### 15.2.2 Modification Before Substantial Consummation

After the Effective Date but prior to the "substantial consummation" (as that term is defined in Section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor or the Committee may, pursuant to Section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and otherwise provide for such matters as may be necessary to carry out the purpose and effect of the Plan, as long as the proceedings do not adversely affect the treatment of holders of Claims under the Plan; provided, however, that, to the extent required by the Bankruptcy Rules or an order of the Court, prior notice of any such proceedings shall be served in accordance therewith. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not adversely change the treatment of the Claim, or releases granted to, such holder.

### 15.2.3  Modification After Substantial Consummation

After "Substantial Confirmation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor may amend the Plan to provide for technical corrections to the Plan provided that such changes do not affect the interests of the Claim Holders.


## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

### 16.1 Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter.

### 16.2 Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.


### 16.3 Notices

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

<u>**To the Debtor**</u>:
Paul C. "Hoop" Roche
1 Plastics Road
Corry, PA 16407

<u>**To Counsel for the Debtor**</u>:
Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc.
Lawrence C. Bolla, Esq.
2222 West Grandview Boulevard
Erie, PA 16506-4508

**To Counsel for the Committee:**
Bernstein Law Firm, P.C.
Kirk B. Burkley, Esq.
2200 Gulf Tower
Pittsburgh, PA 15219

## 16.4 Further Documents and Actions

The Debtor shall execute, and is authorized to File with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan. The Debtor and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

## 16.5 Relationship Between the Plan and Disclosure Statement

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

## 16.6 Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Reorganization Case, including the Debtor, are and will be reserved in full. Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

## 16.7 Post-Confirmation Date Fees and Expenses

After the Confirmation Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professionals employed by the Estate or the Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged. The fees and expenses of such Professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefore to the Debtor. If the Debtor disputes the reasonableness of any such invoice, it shall timely pay the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness. To the extent that the Debtor pays any Professionals employed by the Debtor, the Debtor shall provide notice of those payments to the Committee, with the Committee having ten (10) days to object thereto and request a hearing before the Court.

**16.8 Binding Effect**

The provisions of this Plan shall be binding on, and shall inure to the benefit of, the Debtor, all holders of Claims or Equity Interests, any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, and any current or future heir, executor, administrator, successor, assign or any person or entity claiming derivatively through or because of any of the foregoing (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

**16.9 Exhibits**

All Exhibits and Schedules to this Plan are incorporated into and are part of this Plan as if set in full herein.

IN WITNESS WHEREOF, the undersigned has duly executed the Plan as of the date first above written.

Dated:  May 6, 2009

Respectfully submitted,

QUINN, BUSECK, LEEMHUIS, TOOHEY &
KROTO, INC.

By  */s/ Lawrence C. Bolla*
      Lawrence C. Bolla, Esq.
      Pa. Id. No. 19679
      Nicholas R. Pagliari, Esq.
      Pa. Id. No. 87877
      2222 West Grandview Boulevard
      Erie, PA  16506-4508
      (814) 833-2222
      Counsel to the Debtor

- And -

BERNSTEIN LAW FIRM, P.C.

By /s/ *Kirk B. Burkley*
      Kirk B. Burkley, Esq.
      Pa. Id. No. 89511
      Gulf Tower, Suite 2200
      Pittsburgh, Pennsylvania 15219
      Tel: (412) 456-8108
      Counsel to the Official Committee
      of Unsecured Creditors

Document #428532

AMENDED EXHIBIT 10.1 A

Executory Contracts and Unexpired Leases being Assumed:

Exhibit 11.1 A

Assets to be Abandoned

None.

Exhibit 13.8 A

Preference Claims

| | |
|---|---|
| Adhesive Systems, Inc. | ADP Inc |
| Brown Gibbons Lang & Company | Bruce Cleevely |
| C R Campbell Trucking, Inc. | Channel Prime Alliance LLC |
| CHEP USA | Coca-Cola Company |
| Corry Income Tax Receiver | Corry Water Dept |
| Coy Herald | DOW Chemical |
| Edward J. Buell | Farley's Industrial |
| Fastenal Company | Fidelity |
| Fllint Hills Resources | Georgia Pacific Corrugated |
| Goss Gas | Guardian Life Insurance Co. |
| Highmark, Inc. | Husky Injection Molding |
| International Paper | IUE/CWA-Dues |
| Ivanhoe Tool & Die Co. Inc. | J & A Tool Company Inc. |
| J B Hunt Transport, Inc. | Jepson Precision Tool Inc. |
| Kenmore Label & Tag | Kent Elastomers |
| LEMAC Packaging | Linda Hajec |
| Liquid Molding Systems | Martin Binder |
| Menasha Packaging Company | Mold Masters Limited |
| Nova Chemicals, Inc. | Ohio State Treasurer |
| PA SCDU | PA Unemployment Comp Fund |
| Penelec | Penn Pallet Inc. |
| Poly One Corporation | Principal Life Ins. Co |
| Reeves & Reeves | Regal Service |
| Retirement Planners & | Rite Systems |
| Riverdale Color MFG Inc. | Saint-Gobain Performance Plastics Corp. |
| Skylon, Inc. | Standridge Color Corp |
| Steve Sullivan | Sunoco Receivables Corp |
| Tayden Inc., dba Bond Spring | Thomas Ruble |
| UPS | Verizon Select Services, Inc. |
| Wells Fargo Equipment Finance | |